Our next case this morning is Megan Faxel v. Wilderness Hotel & Resort. Mr. Lynch. Good morning, Your Honors. May it please the Court, my name is Dennis Lynch. I represent the plaintiffs, Megan and Mike Faxel. Mrs. Faxel was a paying guest at the Wilderness Water Resort. When her tube got stuck on a water slide, she flipped out of it, broke her collarbone, and required three surgeries. The evidence deduced in discovery showed that a similar occurrence had happened five months earlier. The resort reported it to the manufacturer, who said to monitor the issue, and Wilderness did not truly monitor the issue. They did not make any formal effort to record incidents. They only record injuries. And the only way they would track if a tube was stuck, but a person was not injured, is if the passenger or the guest happened to report it to staff. After Mrs. Faxel was injured, a maintenance tech looked at the water slide and determined there was a problem with the water pressure and made adjustments. And then months later, the manufacturer also came out to resolve the dry spot and move the water jets to relieve this dry spot that had occurred, and that according to their documentation, multiple riders had been stuck. Despite all of this evidence, the magistrate did not send this case to the jury to determine whether the conduct, the actions, and inactions of Wilderness were reasonable, and instead granted summary judgment. We ask that you reverse summary judgment today, because there are at a minimum genuine issues and material facts, which should be resolved by a jury. Reasonableness of conduct is an issue for the jury, not for the court to be ruled on at summary judgment. Well, if I could cut to the chase here, and you probably heard the earlier discussion of expert witnesses and our other... I found it very enlightening. That's a products case. This is a straight negligence case. That's Illinois law. This is Wisconsin law. So let's situate this requirement of an expert issue in the context of Wisconsin negligence law. Sure. So in Wisconsin negligence law, it is extraordinary that an expert would be required. That's a really old standard from a case from the 60s or 70s, and the law has advanced well beyond Bruss and Netzel. I respectfully disagree, Your Honor. Unfortunately, the nature of the Wisconsin courts is that they don't publish decisions as often as some other courts do. Those are Supreme Court cases. Correct. The state Supreme Court publishes all of its cases and has had a lot to say on products liability and negligence law since the 1960s and 70s. Sure. I think the general standard has remained. Again, what can a jury understand? It's no longer an extraordinary occurrence that a court would say expert testimony is necessary. Sure. So let's just take that out of it. Okay. But still, the issue is we have evidence from qualified individuals. We have evidence from the wilderness people and the manufacturers people, and we have evidence in the business records that there was notice, there was confirmation of a defect, there was an eventual repair. The question that's missing is, was wilderness's actions reasonable? And that's not a question that an expert touches on or has to touch on. That's the decision that the jury makes, is what happened reasonable? And I think the Weiss case, which is a more recent case, the bad faith case, kind of touches on that as well, where it gets into the issue that that was a bad faith case where the allegation was the insurance company did a bad investigation. They just didn't look into this claim very well. And the court determined there was not an issue an expert needed to talk about. We're not talking about complex insurance issues. We're talking about what they did, was it reasonable or not, and that's the issue for a jury. And it's the same in this case. Didn't wilderness, though, alert the manufacturer and installer of the water ride, for lack of a better word, about the one incident they had? They did, Your Honor, and I think there's two important issues there. Number one, they have a non-deligible duty. So just relying on a manufacturer is not discharging a non-deligible duty. And I think it's noteworthy that the issue of the non-deligible duty never is mentioned in the magistrate judge's opinion. So they contact the manufacturer, and the manufacturer said, you know, we looked at it. It all looks good. It all looks fine to us. Just, you know, keep a record of what happens, and it's all good. And so the question is what else would Wilderness Hotel have done, and isn't that why we need an expert? So the issue is they didn't truly monitor it. There was no formal efforts made to monitor it. The corporate rep for Wilderness admitted they would rely on the customer or on the guest to report if they got stuck on the ride. They were only reporting injuries. So there's that issue that they weren't truly monitoring it. And, again, the statute requires that defects be repaired, not monitored. So I shouldn't say the statute. The jury instruction that talks about the non-deligible duty of an amusement park like this talks about the requirement to repair a defect. So they had a similar incident. They don't monitor it. They only rely on their guest to tell them if they got stuck. Even though they have cameras inside it, as your honors, I'm sure, have seen the videos, they have cameras inside that they could actually monitor it, but they chose not to. And a jury gets to decide whether or not that's reasonable. I also think it's important, your honors, and, again, this kind of gets into the earlier case, there has been no response to Wilderness as to our instruction or warnings claim. So if we take Wilderness at its word that it was monitoring this ride to see if this defect reoccurred, why wasn't it warning its paying guests that it was doing that? Why wasn't it telling guests, by the way, you could get stuck on this ride, and here's what you should do? It was not doing that, and there was no response in Wilderness briefs as to those claims with the exception of pointing out that the sign being put up afterwards would potentially be a subsequent remedial measure. There's no response on the merits to that instruction or warnings claim. And, again, I don't feel that an expert would be needed on that point. I think a jury can determine what's reasonable in the circumstances. I think there's also several instances that were highlighted in the briefs, your honor, that the magistrate's analysis was incorrect, did not draw inferences in our favor, did not have a correct hearsay analysis. Unless there's any other questions on those subjects right now, I just reserve the balance of my time. That's fine. Thank you. Mr. Lesner. Good morning, your honors. Justin Lesner on behalf of the Wilderness Resort and Hotel. The district court got it right when it entered summary judgment in favor of the Wilderness and dismissed plaintiff's claims involving a water slide injury case. Expert testimony was required to prove plaintiff's claims because the case involves complex and technical issues beyond the common knowledge of a juror. And that's the test for expert testimony. The issues in this case included proper water pressure and water flow on a water slide, proper water slide inspection, monitoring, maintenance, repair, and record keeping, as well as the cause of Ms. Faxel becoming stuck on the day in question. The Faxels argue expert testimony is not needed because of this prior incident five months earlier. And that video shows a rider getting stuck on the same ride, but she doesn't tip over and there's no evidence she was injured. It was just a stuck rider. It wasn't a fractured collarbone, anything of that sort. As Judge Lee pointed out, Wilderness promptly reported this incident to the water slide manufacturer. And the water slide manufacturer, ProSlide, informed Wilderness, there's no cause for immediate concern. We've seen this before. Keep an eye on it. And that's what Wilderness did. They kept an eye on it. And their inspection protocols are addressed in the briefs. But a rider test rides the slide every day before it opens. Water flow is on this detailed checklist of what is looked into every day. There's attendance at the top and bottom of the ride. And they're trained, and this is the testimony of Brandon Schindler, to monitor the ride for any performance issues. If someone comes off their tube down to the end of the ride, that's something that's not supposed to happen. They're trained to be on alert for that. So common sense would suggest that the manufacturer of the ride, ProSlide, has the know-how to troubleshoot the issues with the slide. And if common sense, if the standard in the water park industry defies common sense, that's where I think you need to have an expert come in and to instruct the jury on what the standard of care in the industry is. So that's what's missing in this case. Each case and the need for expert testimony is judged on the facts of that case and the theories alleged. When you look at this case, these unique facts, the jury would be left to speculate on what the standard of care is in the water park industry. The need for expert testimony was also highlighted in the corporate representative deposition from ProSlide. We took his deposition. He reviewed the video of Ms. Faxel getting stuck. He testified it did not appear she got stuck on a dry spot, which is a zone between two injectors. It's not actually dry. But he said that did not appear to be caused by a dry spot. Mr. Avery went in to discuss the variables that could explain someone getting stuck on a ride. Tube inflation, the sprinkler lubrication, injector flow, water flow, to name a few. What's missing in this case is any testimony as to whether any of those contributed or caused Ms. Faxel's accident, and whether Wilderness breached the standard of care for not doing those things. One decision that was cited in our briefs that I believe is pretty instructive to this case is the Seventh Circuit's decision in Sade v. Omni Hotels Management Corporation. It's from 2007. In that case, a plaintiff sued a hotel for failure to provide sufficient security to prevent a criminal act from another guest that occurred at the hotel. The court held that expert testimony was needed to establish negligence against the hotel. In that case, the court drew a distinction between the standard of care in automobile negligence case, which an average juror can surely comprehend, and that to which the hotel should be held for failure to protect its guests from criminal acts. The facts are a little bit different, but I think it's akin to this case where you have a complex product, a complex ride, where many different variables could cause someone to get stuck, that expert testimony is required. If the court imposed a requirement for expert testimony in the Sade case, I believe it was appropriate for the district court to do that in this case. There's no Wisconsin cases on point involving water slide accidents or Seventh Circuit cases that I could find. I've dug deep, but there are other decisions, and they're not binding on this court, I understand, but I think they're uniform in the fact that water slides are complex, technical. The different people involved, the manufacturer, the designer, the operator, that is a complex topic. In all of those cases, the court did impose a requirement for expert testimony. The Rabati v. Great Wolf Lodge case, Middle District of Pennsylvania federal case, the court there held that the correlation between increased water pressure on a water slide and this asserted injury is not so simple and obvious to obviate the need for expert testimony. But are those product defect cases, or are those cases involving liability of the water park for negligence in connection with maintenance, inspection, et cetera? Those were directly negligence claims against the water park operator. Great Wolf Lodge is a water park. The Rabati case was against the Great Wolf Lodge, so akin to this case. A negligence case, not a strict liability. And I do want to address the warnings claim. I was listening intently when the prior case was before you. But in this case, you had one rider in March get stuck without being injured. After that period of time, you have tens of thousands of riders use this slide without any evidence of someone getting stuck or injured in a fashion similar to misfaxel. The common sense tells you that's a very safe ride or safe ride. If the water park industry requires something else, I think that's, again, where you need an expert to come in and tell the jury, because the jury is not going to have that knowledge. How often should a warning be given? And there were instructions, not about being exactly stuck, but it's an extreme ride. Hold on to the handles. There's risk of deceleration and acceleration from the front and rear of the tube. So in that situation, based off the specific facts in this case, I believe the district court got it right. So in sum, if you look at the facts of this case, the nature of plaintiff's theories, the fact that wilderness followed the manufacturer's advice, there's no cause for immediate concern, monitored the ride, they did that, that these are complex and technical issues, that summary judgment was properly made. The court has no further questions. I'll rest. Thank you. Mr. Lynch. Your Honors, I think the important thing we have here in the record that's very different from all of these out-of-state water slide cases is that we do have evidence from competent, qualified individuals, and those are the people from wilderness and from ProSlide that admit that a dry spot would be a defect, that you can't let somebody use it if there's that defect, that you have to monitor for that defect, and you have evidence that after Mrs. Vaxel's injury, the maintenance tech from wilderness went into the slide, stopped. They used the cameras and stopped where she was injured, and he determined there was something wrong with the water pressure. Then they fixed it a month later to remove the dry spot. That should have been detected by wilderness before. It should have been fixed when they knew about it in March. And when we keep talking about there's no other incidents, we don't know that because the business records from ProSlide talk about riders getting stuck, and then somehow that gets turned into just that one rider in March. ProSlide said they didn't even know about Mrs. Vaxel's injury until the accident started, until the lawsuit started. So we have those business records, and we have the fact that they weren't actively monitoring for these other incidents. They don't know unless someone told them they were stuck. That's not exactly right. The evidence is that there were daily tests of this ride and daily inspections of this ride and tens of thousands of safe rides between the stuck rider in March and this incident. So it's not as if they were doing nothing. They were maintaining their ordinary inspection and maintenance protocol for safety purposes. But I think that's the issue. They were maintaining an ordinary protocol when they should have been monitoring for stuck riders, and they admitted that they wouldn't monitor for that unless a guest comes up and tells them, hey, I got stuck. Nothing happens. When they come out of their tube, nothing happens. So the monitoring is flawed, and the business records show that this was an ongoing issue. And again, I think at the end of the day, the question is, what's a jury going to do with this information, and is there enough to get to a jury? And I think on these facts, when you have a prior incident, you have confirmation of the defect afterwards. The testimony is that Mrs. Vaxel did everything right. She used the ride correctly. This is a case that should be resolved by a jury, not by the magistrate judge. Unless there's anything else, I'd just ask that you reverse. All right, thank you very much. Thank you. Thanks to both counsel. The case is taken under advisement.